## JOHN EDMOND FORD v. STATE.

No. A-10071.   Jan. 17, 1942.

(121 P. 2d 320.)

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

A. W. Jenkins and Owen F. Renegar, both of Oklahoma City, for defendant.

BAREFOOT, P. J.   Defendant, John Edmond Ford, was charged in the district court of Oklahoma county

with the crime of driving an automobile "while intoxicated and under the influence of intoxicating liquor" on the 18th day of September, 1940; was tried, convicted by a jury and punishment assessed by the court at 90 days in the state penitentiary, and he has appealed.

A motion has been filed by the Attorney General to strike the case-made for the reason that extensions of time to prepare and serve the same had expired one day prior to the time allowed by the court for the filing of the same. We have examined the record and find that the allegations of the motion are true, but we have decided to examine the record on its merits, inasmuch as the case had been briefed by defendant prior to the filing of the motion to dismiss.

The only contention of defendant for reversal of this case is that the evidence was insufficient to sustain the judgment and sentence and the proof did not show that defendant was driving a "motor vehicle." The record reveals that Jack Bond, a motorcycle police officer of Oklahoma City, was on duty at a school crossing at 25th and South Central streets in Oklahoma City at about noon on September 18, 1940; that he was stopping cars and assisting school children to cross the street. His testimony is as follows:

"A. I had the traffic stopped north and south on Central and was helping the school children across the street on the south side where we had it marked for a cross walk and I had one car or maybe two stopped on the south side and maybe one on the north side on 25th street and I had my back to the south and I heard a commotion behind me and turned around quick and this gentleman was driving his car up within five or six feet of me and I just turned around and he had a difficult time getting the car stopped and about two or three children had run on across the street and I started over to

this man in the car and when I started to the car I held my hand up for him to stop and he put the car in gear and drove north by me and I jumped on the side of the car and he went about one-third of a block and me telling him to stop and he didn't stop and I grabbed the steering wheel and turned it to the right and drove it up on the curb on the east side of the street on Central about one-third of the block from the intersection north. Q. Did you then make an investigation or examination of the defendant at that time? A. I took the defendant out of the car and he was in a drunken condition and I sat him on the running board and called to another officer that was off duty at the time and was standing at the intersection to call me a car, that I had a drunk man. Q. Did someone come to help you? A. He called presumably for Mr. Lackey. Q. Did you get a man out there? A. Yes, sir. Q. How did he come out? A. In a patrol car. Q. From the police department? A. Yes, sir. Q. After the officer came out in the patrol car, what did you do with the defendant? A. I placed him in the car by the side of the driver and got on my motorcycle and followed them to the police station, where we took him in and booked him. Q. Who was on the desk when you took him in? A. Bob Collins. Q. I believe you said you had been a police officer for a good many years? A. Yes, sir. Q. Do you know or can you tell when a man is drunk? A. I believe I can. Q. You had an opportunity to observe this man, didn't you? A. Yes, sir. Q. Was he drunk or sober? A. He was drunk. Q. What kind of an automobile was he driving? A. A 1936 model Ford coupe. Q. Did he say anything to you on the way down to the station or at any time? A. He did not speak a word to me from the time I first saw him until I put him in jail. Q. While he was down at the station you saw him there at the desk? A. He was in such a drunken condition that the man that booked him could not understand his name and I read it from his driver's license. Q. That he had on his person? A. Yes. Q. Could he walk or stand up? A. He was leaning against the desk. Q. Did he pass any car in that school

zone? A. He passed a car that was waiting on the south side of the intersection."

The testimony of this officer was corroborated by Bob Collins, a lieutenant with the police department in Oklahoma City. He testified that defendant was drunk at the time he was brought before him. He stated:

"A. I asked him his name and he mumbled something that was not understandable, that I didn't understand, and he had to hold onto the booking desk and was weaving around and slobbering; he didn't have control of himself."

Defendant did not take the witness stand, but introduced several witnesses who testified that they had seen him on the morning of the 18th of September, and that, in their opinion, he was not under the influence of intoxicating liquor. The latest they had seen him was about 10 o'clock. It will be noted from the above statement of the evidence that it was amply sufficient to justify the jury in returning a verdict of guilty against the defendant.

It is contended that the proof did not show that defendant was driving a motor vehicle. The officer testified he was driving a "1936 model Ford coupe." As stated in the brief of the Attorney General, there have been many jokes on the Ford of early days, but this is the first time we have heard it seriously contended that they are not motor vehicles. There is nothing in the record to justify the modifying of the sentence imposed by the court in this case. The only wonder is that some school child was not seriously injured by the acts of this defendant, taking into consideration his condition at the time. The judgment of the district court of Oklahoma county is affirmed.

JONES and DOYLE, JJ., concur.